IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Page Plus of Atlanta, Inc. and  Case No. 3:11 CV 2757
SNAP Prepaid LLC,

                                  MEMORANDUM
              Plaintiffs,    OPINION AND ORDER

            -vs-                       JUDGE JACK ZOUHARY

Owl Wireless, LLC,

              Defendant.

## INTRODUCTION

In advance of the scheduled September trial date in this case, Plaintiffs, Page Plus of Atlanta, Inc. and SNAP Prepaid, LLC (collectively, "Plaintiffs"), and Defendant Owl Wireless, LLC ("Owl") filed Motions in Limine (Docs. 48, 50 & 55) raising issues regarding an alleged assignment from Page Plus to Snap, and the materiality of the respective contract breaches by Plaintiffs and Owl. This Court held a hearing where these issues were further discussed (Doc. 90). This Court then requested additional briefing from the parties (Docs. 108 & 109).

This Court now finds that no assignment occurred as a matter of law and dismisses Count I of the Complaint (Doc. 1). The only issue remaining for trial is the amount of damages to be awarded to Owl for the breach by Page Plus of Section 2.1 of the Agreement (Doc. 6).

## BACKGROUND

This is a dispute between Plaintiffs, affiliated distributors, and Defendant Owl, a wholesale supplier. Both parties are involved in the business of prepaid phone cards and cell phones. As a result of prior litigation, Page Plus and Owl entered into an October 2008 Distribution Agreement ("Agreement") under which each party assumed various rights and obligations related to the sale of

prepaid air time and phone cards. The Agreement expired on October 31, 2010. On October 8, 2010, Page Plus initiated litigation against Owl (Case No. 10 CV 2296 at Doc. 1). This Court dismissed that case and allowed Page Plus to refile under the instant case number in order to enable Page Plus to add Snap as a new party.

In an earlier Order (Doc. 22), this Court held that both Plaintiffs and Owl breached the Agreement. This Court found that Owl breached Section 7 of the Agreement when it adjusted its pricing for Plaintiffs without also increasing pricing to other customers (*id.* at 6). This Court also found that Plaintiffs breached Section 2.1 of the Agreement by selling to Blackstone and Budget after these accounts were transferred to Owl (*id.* at 10).

Page Plus alleges that, effective January 1, 2009, it assigned its rights and obligations under the Agreement to Snap. As this litigation has progressed, the parties have keyed in on whether an assignment of the Agreement actually occurred and the legal effect of such an assignment. Owl contends the assignment was invalid; Plaintiffs claim the assignment was valid and, even if it was not, Plaintiffs still can recover on their breach of contract claim.

## STANDARD OF REVIEW

A court may, after "giving notice and a reasonable time to respond," grant summary judgment on its own "after identifying for the parties material facts that may not be genuinely in dispute." Fed. Civ. R. 56(f). Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and a party is "entitled to judgment as a matter of law." This burden "may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering summary judgment, this Court must draw all inferences from the

record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, this Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

## DISCUSSION

### Alleged Assignment

The parties dispute whether Page Plus assigned its rights and obligations under the Agreement to Snap. Owl contends no such assignment occurred and, as a result, Plaintiffs have no damage claim against Owl because the breach of contract claim was brought in Snap's name alone. The Complaint (Doc. 1) filed in the instant litigation reads in part as follows:

**COUNT I**
**(Breach of Contract - Pricing Changes on behalf of SNAP)**

\* \* \*

32. Owl failed to meet its obligations with respect to pricing charged to SNAP for pre-paid cellular products. Specifically, Owl has not applied these price changes that it applied to SNAP to all of Owl's other distributors as required by Section 2 of the 2008 Distributor Agreement.

33. Owl's breach of Paragraph 7 of the 2008 Distributor Agreement was done with the intent to injure or destroy SNAP's business and usurp market share from SNAP.

34. As a direct result of each of these breaches, Page Plus Atlanta has been wrongfully injured and is entitled to recover damages in an amount in excess of $2 million.

The remaining Counts in the Complaint have been dismissed by this Court (*see* Doc. 22).

Owl correctly points out that Snap cannot sue Owl for breach of the Agreement if Page Plus never validly assigned the Agreement to Snap in the first place. *See Thornton v. Windsor House, Inc.*, 57 Ohio St. 3d 158, 161 (1991) ("Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio."). (Plaintiffs do not claim that Snap is an intended third-party beneficiary.) If the assignment is invalid, Page Plus may have otherwise been able to maintain a claim against Owl for breach of the Agreement but for the fact Plaintiffs specifically and intentionally pled this claim in Snap's name alone.

Why did Page Plus add Snap as a party to this litigation in the first place? At some point, Page Plus realized that the bulk of purchases from Owl were made by Snap, not Page Plus. This Court allowed Page Plus -- on the eve of the first trial date -- to refile and amend its pleadings to add Snap as a party. And now, on the eve of this trial, Plaintiffs find themselves in another hole dug by themselves.

An assignment of rights is, itself, a contract, and "in order to establish an assignment, the elements of a contract must be present." *Hamrick v. Safe Auto Ins. Co.*, 2009 WL 790306, at *4 (Ohio Ct. App. 2009). Those essential elements include mutual assent and consideration. *Id.* "No particular words are required to create an assignment," rather "any word or transaction which shows an intention on the one side to assign and on the other to receive, if there is a valuable consideration, will operate to create an assignment." *Hsu v. Parker*, 116 Ohio App. 3d 629, 632 (1996) (internal citations and quotation marks omitted). The party alleging the existence of the contract bears the burden of showing there was a meeting of the minds and that the contract was definite as to its essential terms. *Hamrick*, 2009 WL 790306, at *4.

The narrow question here, as admitted by the parties in their briefing and at the hearing, is whether Plaintiffs have put forth enough evidence to establish the existence of a genuine issue of material fact regarding a valid assignment. This Court finds that Plaintiffs have not.

Owl offers the following evidence to show that a valid assignment does not exist:

- Page Plus and Airlink's Verified Complaint from the 2010 litigation made no mention of Snap. Rather, it stated only that Owl and Page Plus entered into the Agreement and advanced substantial claims for damages on behalf of Page Plus and Airlink, but not Snap (Case No. 10 CV 2296, Doc. 1 at ¶¶ 12-27, 29-30, 32-33, 35-36, 38-41, 43-45, 47-51, 53-58, 60-68, 70-71). Additionally, when they filed their Verified Complaint, Page Plus and Airlink also sought an emergency injunction requiring Owl to continue doing business with Page Plus, not Snap (Doc. 7, Page Plus' Emergency Motion at 3).

- In response to an Interrogatory in the 2010 litigation, Michael Lizdas, answering on behalf of Airlink, stated that "Page Plus of Atlanta, Inc. is the only party to the 2008 Distributor Agreement with Owl. As such all claims asserted against Owl in this litigation are claims asserted by Page Plus of Atlanta, Inc., not Airlink Communications, Inc." (Doc. 50-1, Ex. A).

- During his August 2011 deposition as Page Plus' corporate representative, Lizdas never indicated Page Plus had assigned any rights to Snap. Rather, when asked about Snap, Lizdas testified only that Snap was a separate entity formed by Lizdas and Steve Harris when they learned they would no longer be an exclusive distributor for Owl in 2008 (Lizdas Dep. I at 28-29). He explained they formed Snap "to begin building our own name recognition" (Lizdas Dep. I at 29). He gave no indication, let alone any factual testimony, that Page Plus had ever assigned any contract rights to Snap.

- The August 2011 testimony of Harris is that Page Plus buys air time from vendors like Owl and sells it to Snap (Harris Dep. I at 10-11 & 15):

    A. Airlink was our first name. . . . Once we rolled out the nationwide, we changed our name to Page Plus of Atlanta, just because if we were moving strictly the Page Plus products, it made sense that we would call it Page Plus. And once our relationship started faltering, we decided to no longer carry their name and carry our name, and changed it to Snap Prepaid. We keep Page Plus of Atlanta operational. That's what's under our contract. Just on our terminal side of the business, we use Snap Prepaid.

5

> Q. And what is the nature of [Page Plus'] business, say, today?
> A. Today it would just be pretty much when we bought the Page Plus products, we would sell them, then to our other company.
>
> Q. And are you still doing that today?
> A. No, we aren't.

- In a later deposition in which Lizdas claimed an assignment occurred between Page Plus and Snap, he could not recall a specific conversation with Harris about assignment (Lizdas Dep. II at 20-21). Nor could Harris recall a specific conversation about assignment (Harris Dep. II at 12-13).

- After the alleged date of assignment, Page Plus purchased phones and air time from Owl, even though Snap was also purchasing air time from Owl (Doc. 50-1, Ex. C, Dile Aff. at ¶¶ 2, 3).

(Doc. 50 at 3-10).

Steve Harris and Michael Lizdas were owners and officers of both Page Plus and Snap. They owned the companies on "both sides" of the deal and, because of this fact, Plaintiffs contend that no formal documentation of the assignment exists (Harris Dep. II at 17, 39). Plaintiffs allege that the following evidence creates a genuine issue of material fact about the validity of the assignment:

- Harris and Lizdas met to discuss their desire to set up a new entity for operation of their prepaid cellular business (Lizadas Dep. II at 32-33; Harris Dep. II at 6). And the two negotiated a clause in the Agreement which allowed for assignment to a new entity (Harris Dep. II at 8-11 & 36).

- With the assistance of attorneys and a CPA, Lizdas and Harris organized a new entity, Snap, to take over the Agreement (Harris Dep. II at 8-11 & 36).

- After consulting their CPA, Lizdas and Harris testified they transitioned the Agreement from Page Plus to Snap effective January 1, 2009.

- In a January 7, 2009 e-mail from Eileen Lovingood at Page Plus to Lisa Dile at Owl, Page Plus requested that Owl change its records to reflect the new entity and Lovingood sent Dile a W-9 for Snap (Doc. No. 82-1, Ex. A).

- In consideration for the assignment of the Agreement to Snap, the ownership share of Harris in the company increased from 26 to 30 percent.

(Doc. 82 at 3-4).

6

However, on the last point, Plaintiffs fail to point to any record evidence of the change in ownership share. The only "evidence" is the allegation of a four percent change in ownership interest in the briefing and statements to this Court at the hearing. Plaintiffs have **not** submitted affidavits or documents or cited any testimony reflecting a change in ownership, despite this Court's recent specific request for a record cite (*see* Doc. 122). In addition, it is not clear to this Court how a four percent ownership change for Harris amounts to consideration between Page Plus and Snap. Simply put, Plaintiffs failed to direct this Court to a single piece of evidence supporting consideration between Page Plus and Snap, a required element of assignment.

Yes, the Agreement allowed for an assignment, and Page Plus took steps to create a sister company, Snap, which made purchases from Owl, but more is required to send the issue to a jury. In addition to finding no evidence of consideration, this Court further finds that Plaintiffs failed to point to sufficient evidence of an intent to actually assign the Agreement to Snap or mutual assent. In fact, Plaintiffs' own conduct during the history of this litigation, as cited above, supports the opposite conclusion -- Page Plus did not believe it had assigned the Agreement to Snap.

In light of this Court's finding that Plaintiffs have offered insufficient evidence to submit the issue of assignment to a jury, Snap cannot maintain a breach of contract claim against Owl. The first element of a breach of contract claim is the existence of a contract. *Sobh v. Am. Family Ins. Co.*, 755 F. Supp. 2d 852 (N.D. Ohio 2010) (citing *Garofolo v. Chicago Title Ins. Co.*, 140 Ohio App. 3d 95 (1995)). Here, a contractual relationship did not exist between Snap and Owl; no breach could have occurred when Owl sold to Snap at the increased prices.

\* \* \* \* \* \*

7

**ADDENDUM**

Just prior to the filing of the above Order, this Court received a supplemental letter and supplemental filing (Doc. 123) from Plaintiffs. This supplemental filing was made without leave of court. Nonetheless, on top of all the other filings in this case, this Court will consider this latest submission.

In this letter, counsel refers to specific pages of deposition testimony of Lizdas and Harris (Docs. 48-2 & 48-3). This Court notes that these page citations were not made in earlier briefings. It appears that this Court's recent phone call questioning what evidence supports a finding of consideration for the assignment has prompted this letter with the specific pages and attached affidavit of Lizdas.

However, this evidence does not change this Court's conclusion. This evidence does confirm the argument made in Plaintiffs' earlier briefing: namely, that there was a change in ownership between Lizdas and Harris with respect to Page Plus and Snap. But, this fact cannot, as a matter of law, constitute consideration between Page Plus and Snap, who are the alleged parties to the assignment. How does this change in personal stock ownership reflect consideration between the two companies? Plaintiffs offer no explanation.

Plaintiffs also provide K-1 schedules for Harris and Lizdas to further support this change in ownership, at the same time explaining that the K-1s themselves do not accurately reflect the ownership of the companies. Again, this Court asks, where do these facts lead? Certainly they do not support corporate consideration. Whatever the ownership position of Lizdas and Harris with these two companies, a four percent change in ownership as between these two individuals cannot be evidence of consideration for the corporate assignment. In *Carlisle v. T & R Excavating*, 123 Ohio

8

App. 3d 277, 283–84 (1997), the court reversed a damage award for breach of contract because there was no consideration:

> Whether there is consideration at all, however, is a proper question for a court . . . While it is true that courts generally do not inquire into adequacy of consideration once it is found to exist, it must be determined in a contract case whether any "consideration" was really bargained for; if it was not bargained for, it cannot support a contract . . . There is no evidence in the record of any benefit accruing to T & R or any detriment suffered by Ms. Carlisle due to their agreement that could constitute consideration for a contract.

*See also Carey v. Fedex Ground Package Sys., Inc.*, 321 F. Supp. 2d 902, 921 (S.D. Ohio 2004).

Plaintiffs' letter closes with a plea to send this issue to the jury. Curiously, Plaintiffs indicate the record is "not complete on the issue of assignment," but Plaintiffs offer no indication of what additional evidence they might have. Moreover, this Court has made clear on multiple occasions that now, not later, is the time to turn over the trial cards. Plaintiffs make no proffer that any additional evidence, whatever it might be, would allow this Court to reach a different conclusion.

Plaintiffs further suggest that this Court might as well send the issue of assignment to the jury along with other trial issues and direct a verdict if necessary. But this Court should not allow a legally deficient claim to be presented to the jury. Indeed, the rules require otherwise by placing an obligation on the court to dismiss legally deficient claims.

Finally, Plaintiffs' counsel begs that "the testimony itself will take less than an hour of trial time," and yet, whether the evidence takes one hour or one day, is irrelevant to what this Court must address. Plaintiffs have been given the opportunity to offer up sufficient evidence to satisfy all elements of an assignment, and they have failed.

IT IS SO ORDERED.

                                                   s/ *Jack Zouhary*
                                                   JACK ZOUHARY
                                                   U. S. DISTRICT JUDGE

                                                   October 16, 2012